1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  LOUIS DEVINCENTIS,                    )
                                         )
11          Petitioner,                  )       CASE NO.  C06-680-JLR-JPD
                                         )
12          v.                           )
                                         )
13  KENNETH QUINN,                       )       REPORT AND RECOMMENDATION
                                         )
14          Respondent.                  )
    _____)

15

                    INTRODUCTION AND SUMMARY CONCLUSION

16

17          Petitioner is currently in the custody of the Washington Department of Corrections pursuant to

18  his King County Superior Court convictions for rape of a child in the second degree and child

19  molestation in the second degree.  He has filed a petition for writ of habeas corpus under 28 U.S.C.

20  § 2254 seeking relief from his convictions and sentence.  Respondent has filed an answer to the

21  petition as well as relevant portions of the state court record.  Petitioner has filed a traverse to

22  respondent's answer.  The briefing is now complete, and this matter is ripe for review.  This Court,

23  having reviewed the petition, the briefs of the parties, and the state court record, concludes that

24  petitioner's federal habeas petition should be denied and this action should be dismissed with

25  prejudice.

26  REPORT AND RECOMMENDATION
    PAGE - 1

1                                FACTUAL AND PROCEDURAL HISTORY

2          On direct appeal of petitioner's convictions, the Washington Supreme Court set forth the

3   following factual and procedural history relevant to petitioner's convictions:

4                  In the summer of 1998, K.S. was 12 years old.  Her friend, C.K., lived next
             door to DeVincentis.  That summer, DeVincentis offered the girls money to mow his
5            lawn.  After checking with their mothers, the girls accepted and began to mow his
             lawn together about once a week.

6
                    Sometime during September of 1998, DeVincentis asked K.S. and C.K. to
7            clean his house.  After the girls cleaned together once, DeVincentis asked only K.S. to
             come back.  While K.S. cleaned, Devincentis would be present in the house, wearing
8            only a g-string or bikini underwear.  Devincentis would acknowledge that he was in a
             state of undress by saying something to the effect of "I hope you don't mind."  Report
9            of Proceedings (RP) at 908.  No one else would be present during these times.

10                  One day at the end of October, K.S. arrived at DeVincentis' house to clean.
             DeVincentis told her that he was sore from exercising and asked her to give him a
11           massage.  Wearing only bikini underwear, DeVincentis lay on the couch on his
             stomach and K.S. massaged his back.  After the massage, K.S. felt uncomfortable and
12           left.  DeVincentis told her not to tell anyone or she would be in trouble.

13                  A few weeks later, K.S. returned to clean DeVincentis' house at his request.
             When she reached the bedroom, DeVincentis was there, again wearing only a g-string.
14           He asked K.S. to massage him.  He lay on the floor and told K.S. to take off her
             clothes, which she did.  As K.S. massaged DeVincentis' back, he took off his g-string
15           and asked her to massage his buttocks.  DeVincentis then directed K.S. to massage his
             legs.  Then, DeVincentis told K.S. to lie down, and he massaged her back, buttocks,
16           and legs.  DeVincentis then lay on his back and asked K.S. to massage his stomach
             and eventually his penis until he ejaculated.  K.S. testified that DeVincentis then
17           massaged her chest.  He then touched inside her vagina, hurting her.  K.S. testified
             that she was scared during this and wanted to go home.  K.S. told him she had to go
18           home, and as she left, he again told her not to tell anyone.

19                  K.S. returned to DEVINCENTIS's home again in November.  DeVincentis
             wore a g-string.  After she finished cleaning, K.S. found DeVincentis in his bedroom.
20           DeVincentis asked K.S. if she wanted to give him another massage.  She testified that
             she was scared but said yes.  K.S. testified that she was afraid that DeVincentis would
21           not allow her to refuse.  He told K.S. to remove her clothes, and the massaging and
             sexual contact proceeded as it had the previous time.  Afterward, DeVincentis again
22           warned K.S. not to tell anyone or she would be in trouble.

23                  K.S. eventually told her mother about these events.  Her mother reported the
             events to the police in January 1999.  DeVincentis was charged with one count of
24           second degree rape of a child and one count of second degree child molestation.
             Clerk's Papers (CP) at 1.
25
    REPORT AND RECOMMENDATION
26  PAGE - 2

1   *State v. DeVincentis*, 150 Wn.2d 11, 13-14 (2003).

2   Petitioner was convicted as charged following a bench trial in King County Superior Court.

3   (*Id*. at 16.)  Petitioner was subsequently sentenced to a term of 240 months confinement.  (Dkt. No.

4   11, Ex. 1.)

5   Following his conviction and sentencing, petitioner filed an appeal in the Washington Court

6   of Appeals.  (*See* Dkt. No. 11, Ex. 4.)  On June 10, 2002, the Court of Appeals issued a published

7   opinion affirming petitioner's convictions and sentence.  *State v. DeVincentis*, 112 Wn. App. 152

8   (2002).  Petitioner thereafter sought review by the Washington Supreme Court.  (*See* Dkt. No. 11,

9   Ex. 7.)  Petitioner presented the following issue the Supreme Court for review on direct appeal:

10          Did the trial court err in admitting and considering, pursuant to ER 404(b),
             evidence from 15 years before this alleged offense that DeVincentis had been
11           convicted of a misdemeanor sexual offense where the details of the two crimes failed
             to established [sic] any features except those common to most sexual molestation
12           charges and where the trial judges' written findings reveal that the evidence was
             simply used to show DeVincentis' propensity to commit a sex crime?
13
    (*Id*., Ex. 7 at 1.)
14
          The Washington Supreme Court granted review.  (*Id*., Ex. 8.)  And, on August 14, 2003, the
15
    Supreme Court issued a published opinion affirming petitioner's convictions.  *State v. DeVincentis*,
16
    150 Wn.2d 11 (2003).  The Supreme Court issued its mandate terminating direct review on
17
    September 8, 2003.  (Dkt. No. 11, Ex. 13.)
18
          On September 7, 2004, petitioner filed a personal restraint petition in the Washington Court
19
    of Appeals.  (*See* Dkt. No. 13, Ex. 20.)  On May 25, 2005, the Court of Appeals issued an order
20
    dismissing the petition as time barred under RCW 10.73.090.  (Dkt. No. 11, Ex. 14.)  Petitioner
21
    thereafter sought review by the Washington Supreme Court and, on November 2, 2005, the Supreme
22
    Court granted petitioner's motion for discretionary review and remanded the matter to the Court of
23
    Appeals.  (*Id*., Exs. 15 and16.)  On January 6, 2006, the Court of Appeals issued an order dismissing
24
    petitioner's personal restraint petition on the merits.  (*Id*., Ex. 17.)
25
    REPORT AND RECOMMENDATION
26  PAGE - 3

1    Petitioner sought review of the Court of Appeals' order dismissing his petition on the merits

2  in the Washington Supreme Court.  (Dkt. No. 11, Ex. 18.)  Petitioner presented the following issues

3  to the Supreme Court for review:

4    1.    (a)    Where DeVincentis alleged facts in his PRP which, if investigated and
            presented by trial counsel, would likely have resulted in the pretrial exclusion
5            of prior bad act evidence critical to his conviction has he made a sufficient
            showing that his Sixth Amendment right to effective assistance of counsel was
6            violated justifying either reversal of his conviction or remand to the trial court
            for an evidentiary hearing?

7
        (b)    Is a prior sex offense admissible in a current sex offense prosecution if
8            no common scheme or plan exists to connect the prior and current offense?

9        (c)    If not, was trial counsel's performance deficient where he failed to
            investigate and present evidence that would have shown the "common
10            scheme" relied on by the trial court (and later this Court on direct appeal) did
            not exist rendering that evidence inadmissible?

11
        (c) [sic] Did the Court of Appeals decision constitute "probable error" when it
12            fundamentally misunderstood Mr. DeVincentis' claim concluding that
            DeVincentis' new evidence did not substantially undermine V.C.'s ultimate
13            claim that she was abused by DeVincentis, when instead DeVincentis offered
            the evidence to show the absence of a common scheme or plan between the
14            prior and current incidents?

15    2.    (a)    Where DeVincentis did not testify at the pretrial "prior bad acts"
            hearing solely because counsel failed to inform him of that right has he made a
16            sufficient showing of the denial of his Fifth Amendment right to testify and
            trial counsel's Sixth Amendment ineffectiveness in order to merit an
17            evidentiary hearing?

18        (b)    Did the Court of Appeals commit probable error when it dismissed this
            claim because it concluded there was no clearly controlling authority thereby
19            adopting (in one sentence and without citation to authority) a new standard of
            review for PRP conflicting with numerous decisions of this Court and the three
20            lower appellate divisions?

21        (c)    Did the Court of Appeals commit probable error when it concluded that
            this claim must fail because DeVincentis failed to cite to any contemporaneous
22            evidence in the record that, if he had known he had a right to testify solely at
            the pretrial hearing, he would have exercised that right–an impossible standard
23            to ever meet?

24    3.    (a)    Where the trial court conducted comparability review of two New
            York convictions by relying on facts neither admitted nor proved beyond a

25
REPORT AND RECOMMENDATION
26  PAGE - 4

1

reasonable doubt was DeVincentis denied his Sixth and Fourteenth
Amendment rights to a jury determination?

2

3

(b)      In the alternative, where the trial court made reference to documents
containing unproven facts in its conclusion that both New York convictions
were comparable should this Court remand this case to the Superior Court with

4

the instruction that the trial court conduct comparability review without
reference to facts neither admitted nor proved beyond a reasonable doubt?

5

(Dkt. No. 11, Ex. 18 at 1-3.)

6

The Supreme Court Commissioner issued a ruling denying review on April 5, 2006.  (*Id.*, Ex.

7

19.)  Petitioner now seeks federal habeas review of his convictions and sentence.

8

GROUNDS FOR RELIEF

9

Petitioner asserts the following grounds for relief in his federal habeas petition:

10

Claim One

11

Trial Counsel's Failure to Conduct an Investigation Into the Facts That Rendered a
Prior Bad Act Admissible Constituted Ineffective Assistance of Counsel in Violation of

12

the Sixth Amendment.

13

Claims Two and Three

14

Trial Counsel's [sic] Failed to Inform DeVincentis of His Right to Testify at the Pre-
Trial Evidentiary Hearing.  Counsel's Failure Violated DeVincentis' Constitutional

15

Right to Testify and Constituted Ineffective Assistance of Counsel.

16

Claim Four

17

The Washington Supreme Court's Ruling That The Underlying Facts of DeVincentis'

18

Prior New York State Convictions Were "Comparable" To Washington Felonies,
Thereby Increasing His Maximum Sentence, Violated DeVincentis' Sixth and

19

Fourteenth Amendment Right To A Jury Trial.

20

(Dkt. No. 1 at 14, 30 and 41.)

21

DISCUSSION

22

Respondent concedes that petitioner has properly exhausted his state court remedies with

23

respect to the claims set forth in his federal habeas petition by fairly presenting each of his claims to

24

the Washington courts as federal claims.  Respondent argues, however, that petitioner is not entitled

25

REPORT AND RECOMMENDATION

26

PAGE - 5

1  to relief with respect to any of his claims.  With respect to petitioner's first three grounds for relief,

2  respondent argues that the state court adjudication of the claims was not contrary to, or an

3  unreasonable application of, clearly established federal law.  With respect to petitioner's fourth

4  ground for relief, respondent argues that the claim is not based upon clearly established federal law

5  as determined by the Supreme Court.

6                                          Standard of Review

7          Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be

8  granted with respect to any claim adjudicated on the merits in state court only if the state court's

9  decision was *contrary to*, or involved an *unreasonable application* of, clearly established federal law,

10  as determined by the Supreme Court, or if the decision was based on an unreasonable determination of

11  the facts in light of the evidence presented.  28 U.S.C. § 2254(d) (emphasis added).

12          Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court

13  arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the

14  state court decides a case differently than the Supreme Court has on a set of materially

15  indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable

16  application" clause, a federal habeas court may grant the writ only if the state court identifies the

17  correct governing legal principle from the Supreme Court's decisions but unreasonably applies that

18  principle to the facts of the prisoner's case.  *Id*.  The Supreme Court has made clear that a state

19  court's decision may be overturned only if the application is "objectively unreasonable."  *Lockyer v.*

20  *Andrade*, 538 U.S. 63, 69 (2003).

21                              Ground One:  Ineffective Assistance of Counsel

22          Petitioner asserts in his first ground for relief that his trial counsel rendered ineffective

23  assistance when he failed to conduct an investigation into prior bad act evidence which was admitted

24  at trial to show a common plan or scheme.  Petitioner argues that if counsel had conducted a

25  REPORT AND RECOMMENDATION

26  PAGE - 6

1  competent investigation, he would have discovered impeachment evidence which would have

2  persuaded the trial court to exclude the evidence.

3      The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

4  counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Claims of ineffective assistance of

5  counsel are evaluated under the two-prong test set forth in *Strickland*.  Under *Strickland*, a defendant

6  must prove (1) that counsel's performance fell below an objective standard of reasonableness and, (2)

7  that a reasonable probability exists that, but for counsel's error, the result of the proceedings would

8  have been different.

9      When considering the first prong of the *Strickland* test, judicial scrutiny must be highly

10  deferential.  *Strickland*, 466 U.S. at 689.  There is a strong presumption that counsel's performance

11  fell within the wide range of reasonably effective assistance.  *Id*.  The Ninth Circuit has made clear

12  that "[a] fair assessment of attorney performance requires that every effort by made to eliminate the

13  distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and

14  to evaluate the conduct from counsel's perspective at the time."  *Campbell v. Wood*, 18 F.3d 662 (9th

15  Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

16      The second prong of the *Strickland* test requires a showing of actual prejudice related to

17  counsel's performance.  The petitioner must demonstrate that it is reasonably probable that, but for

18  counsel's errors, the result of the proceedings would have been different.  *Id*. at 694.  The reviewing

19  Court need not address both components of the inquiry if an insufficient showing is made on one

20  component.  *Id*. at 697.  Furthermore, if both components are to be considered, there is no prescribed

21  order in which to address them.  *Id*.

22      On direct appeal, petitioner challenged the trial court's decision to admit the prior bad act

23  evidence which is at issue here.  *See DeVincentis*, 150 Wn.2d at 13.  The Washington Supreme Court

24  held that the evidence was properly admitted.  *See id*. at 21-24.

25

REPORT AND RECOMMENDATION

26  PAGE - 7

1    In his personal restraint proceedings, petitioner claimed that his trial counsel rendered

2  ineffective assistance when he failed to call witnesses at a pretrial hearing to rebut the testimony of

3  V.C.  The state courts rejected this claim.  The Supreme Court explained its ruling as follows:

4         The current crimes were committed against a 12-year-old girl.  To prove a
       "common scheme or plan" to molest young girls in a particular manner, *see* ER
5      404(b), the State sought to admit the testimony of V.C., the victim in Mr.
       DeVincentis's 1983 New York conviction (by guilty plea) of endangering the welfare
6      of a child.  In *DeVincentis*, this court summarized V.C.'s testimony from the pretrial
       hearing:
7
          V.C. testified that in 1983 she was 10 years old and the best friend of
8         DeVincentis' daughter.  V.C. spent three or four evenings a week at
          DeVincentis' home and he was usually present, wearing nothing but
9         bikini or g-string underwear.  V.C. testified that the sight of
          DeVincentis in small underwear became normal to her.  After a
10        birthday party for DeVincentis' daughter, DeVincentis took V.C. to his
          bedroom and showed her pictures of naked people.  He asked her if she
11        had seen a penis before.  DeVincentis was wearing bikini briefs, and he
          asked V.C. if it bothered her that he was dressed like that.
12
          On another occasion, DeVincentis had V.C. sit on his home
13        rowing machine.  DeVincentis sat behind her and she felt what she now
          understands to be his erection pressing against her back.  On this
14        occasion he also "put[ ] his hand in [her] private areas and press[ed]
          down on them hard."  RP at 509.  DeVincentis then showed her another
15        exercise machine and touched her chest and private area and pressed
          his erection against her back.  On another occasion, DeVincentis
16        demanded that V.C. try on transparent, mesh-like clothing.
          DeVincentis stored books and magazines with pictures of nude people
17        throughout his house where his daughter and V.C. could find them.
          Once he offered V.C. ten dollars to pose for a nude picture like one in a
18        magazine.

19        V.C. testified that she had memory flashes of being naked with
          DeVincentis in his bedroom and him asking for back massages.  V.C.
20        also testified that she had memory flashes of DeVincentis putting his
          erection on her and in her mouth and that he ejaculated on her.
21
       *DeVincentis*, 150 Wn.2d at 15 (citation omitted).  The trial court found this testimony
22     admissible as showing a common scheme or plan to get to know young girls through a
       safe channel, gradually to desensitize them to his appearance in bikini underwear, and
23     then to bring them into an apparently safe and isolated environment where he could
       abuse them. [Footnote: The court excluded other past instances of sexual abuse
24     offered by the State.] This Court affirmed.  *Id*. at 22-24.

25
   REPORT AND RECOMMENDATION
26 PAGE - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Mr. DeVincentis now argues that his attorney was ineffective in failing to seek out and present the testimony of his daughter, his son, and his former wife to rebut V.C.'s pretrial testimony and demonstrate that his claimed abuse of V.C. had nothing in common with his current crimes.  In a declaration, Mr. DeVincentis's daughter, [M], says that V.C. was not her best friend and that she can "only remember a few times when [V.C.] was over at our house."  Declaration of [M] DeVincentis at 2.  [M] asserts that her father did not "generally" walk around the house in underwear, that she did not see him wearing bikini or g-string type underwear, and that she never saw him wearing only underwear when V.C. was present.  *Id*. at 2-3.  She denies that her father ever molested her or that she ever told V.C. of any molestation, and she denies that V.C. ever told her of being molested.  [M] recalls seeing her father behind V.C. on an [sic] belt massager, but she says she did not see any inappropriate touching. She also remembers V.C. saying that Mr. DeVincentis had shown her magazines containing nudity.  According to [M], her father's attorney asked her before trial what she generally remembered about V.C. being over at her house, and she responded, "'not much'" *Id*. at 4.

Mr. DeVincentis's son, [J], echoes that V.C. was not a "regular visitor at our house."  Declaration of [J] DeVincentis at 1.  He says his father sometimes wore briefs and a t-shirt when exercising, but did not wear colored underwear and did not walk around the house in his underwear.  [J] never saw his father engage in sexual contact with [M] or V.C.

Mr. DeVincentis's former wife, Barbara DeVincentis, says that, after Mr. DeVincentis was arrested for improper behavior with a young girl in 1980, she became "very watchful" of him.  Declaration of Barbara DeVincentis at 1.  She asserts that she never saw him engage in inappropriate behavior with V.C.  She says that V.C. was not one of [M]'s closest friends and did not live in the same neighborhood.  Ms. DeVincentis also states that Mr. DeVincentis did not walk around the house in his underwear and did not wear bikini or g-string briefs.  She acknowledges that in 1983 she was out of town for six weeks for flight attendant training.

Mr. DeVincentis demonstrates no obvious or probable error in the acting chief judge's rejection of his ineffective assistance claim.  The upshot of these declarations is that none of the declarants saw Mr. DeVincentis abuse V.C., but none says that it did not happen or could not have happened.  [M] admits she told defense counsel she did not remember "much" about V.C. being at her home, and she actually confirmed that her father once was with V.C. on an exercise machine and that her father had shown V.C. nude magazines.  And all three declarants confirmed that Barbara DeVincentis was out of town for six weeks, when the abuse of V.C. allegedly occurred.  As for the declarants' assertion that Mr. DeVincentis never wore colored bikini briefs, Mr. DeVincentis admitted, when he pleaded guilty to the crime against V.C., that he stripped down to black bikini briefs.  He also pleaded guilty to another offense at that time, admitting that he wore red bikini underwear when he committed the crime.  And in his own declaration, Mr. DeVincentis says that had he been permitted to testify at the pretrial hearing, he would have admitted that he "took [V.C.] to his bedroom, removed all of my clothing except my underwear, showed her a book with some pictures of nude adults, and asked her if she wanted to pose with me

REPORT AND RECOMMENDATION
PAGE - 9

1    for money." Declaration of Louis DeVincentis at 2.

2            The declarations Mr. DeVincentis submits thus do not substantially undermine
3    crucial aspects of V.C.'s testimony.  Counsel was not professionally deficient in
     declining to call witnesses whose impartiality could be questioned and through whom
4    Mr. DeVincentis's past abuse might be further explored.  Rather, counsel pursued a
     reasonable strategy of arguing that the acts against V.C. were not sufficiently similar
     to the present crimes to be admissible, and in highlighting during trial the
5    inconsistencies in the statements V.C. had given over the years.  And even if these
     declarants had been called, there is no reasonable probability that the outcome would
6    have been different.  *See State v. McFarland*, 127 Wn.2d 32, 334-35, 899 P.2d 1251
     (1995).
7
     (Dkt. No. 11 at 19.)
8
           Petitioner argues in these proceedings that the state court fundamentally misunderstood the
9
     "upshot" of his post-conviction evidence and lost sight of the fact that the issue was not whether
10
     petitioner sexually abused V.C., but whether the new evidence undermined the factual basis on which
11
     the state courts concluded that V.C.'s testimony was admissible to establish a common scheme or
12
     plan.  However, a reading of the entirety of the Supreme Court's decision on this issue makes clear
13
     that the court understood the ultimate issue to be whether petitioner's trial counsel rendered effective
14
     assistance with respect to challenging the admissibility of V.C.'s testimony.  And, in this Court's
15
     view, the Supreme Court reasonably concluded that counsel was not professionally deficient for
16
     declining to call petitioner's family members as witnesses for purposes of the pre-trial evidentiary
17
     hearing.
18
           Petitioner was represented by highly competent counsel at trial.  A reading of the trial
19
     transcript confirms this.  The admissibility of V.C.'s testimony was obviously a critical aspect of
20
     petitioner's trial, and petitioner's counsel argued vigorously that there were not substantial
21
     similarities between the prior and current crimes to warrant the admission of V.C.'s testimony.
22
     Petitioner's counsel also vigorously cross-examined V.C., and sought to impeach V.C. with grand
23
     jury testimony from 1983 which, in the defense view, differed substantially from what V.C. testified
24
     to at petitioner's trial.
25
     REPORT AND RECOMMENDATION
26   PAGE - 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE - 11

1    Petitioner now suggests that instead of relying solely on V.C.'s prior grand jury testimony to

2  impeach V.C., trial counsel, after learning of the changes in V.C.'s testimony on the eve of trial,

3  should have interviewed petitioner's family members and discovered additional evidence which

4  could have been used to impeach V.C.  The "new" evidence which petitioner asserts counsel would

5  have discovered was that V.C. was not at petitioner's home as often as she claimed in her trial

6  testimony, that she was not the "best" friend of petitioner's daughter, that petitioner did not generally

7  walk around the house in his underwear, and that petitioner never abused his daughter.

8    While petitioner faults trial counsel for not discovering this impeachment evidence, the record

9  suggests that counsel was aware that petitioner's family members believed they could rebut

10 significant aspects of V.C.'s testimony.  (*See* Dkt. No. 13, Ex. 22, Appendix A.)  The fact that

11 counsel did not pursue these family members as witnesses suggests that this was a strategic decision

12 and not a mere oversight.

13    This conclusion is bolstered by other portions of the state court record which suggest that

14 counsel considered, and rejected, the idea of presenting witnesses to rebut V.C.'s testimony.  During

15 pretrial proceedings petitioner's counsel advised the court that V.C. had made a statement which was

16 significantly different from the one she had made during the earlier New York prosecution, and that

17 he would need time to decide whether he would call a witness to rebut her testimony.  (Dkt. No. 16,

18 Ex. 24 at 12.)  Later in pretrial proceedings, counsel once again noted the differences in V.C.'s

19 statements, but expressed his opinion that the changed testimony did not favor the state with respect

20 to the issue of admissibility but, in fact, favored the defense position.  (*See* Dkt. No. 16, Ex. 25 at

21 103.)  This suggests that counsel did not believe there was any need to present witnesses to rebut the

22 testimony of V.C.

23    While petitioner clearly believes at this juncture that his trial counsel should have approached

24 the issue of admissibility of V.C.'s testimony in a different fashion, he fails to establish that the

25

REPORT AND RECOMMENDATION
26 PAGE - 12

1  Washington Supreme Court's was contrary to federal law, or that the court's application of federal

2  law was objectively unreasonable.  The Washington Supreme Court reasonably concluded that

3  petitioner's trial counsel pursued a reasonable strategy with respect to challenging V.C.'s testimony

4  and that, in any event, petitioner was not prejudiced by counsel's alleged deficient conduct.

5  Accordingly, petitioner's federal habeas petitioner should be denied with respect to petitioner's first

6  ground for relief.

7             <u>Grounds Two and Three: Right to Testify and Ineffective Assistance of Counsel</u>

8         Petitioner next asserts that his trial counsel failed to inform him of his right to testify at the

9  pre-trial evidentiary hearing and that this failure violated petitioner's constitutional right to testify

10 and constituted ineffective assistance of counsel.  Petitioner asserts that he did not know that he could

11 testify at the hearing regarding the admissibility of V.C.'s testimony, and that he would have chosen

12 to testify if counsel had informed him of his right to do so.  He contends that he would have provided

13 additional proof that V.C. was an infrequent visitor in his house and that he did not groom her in

14 order to molest her.

15        The Washington Supreme Court rejected these issues in petitioner's personal restraint

16 proceedings:

17            Mr. DeVincentis next contends that counsel was ineffective in failing to
       inform him of his constitutional right to testify at the ER 404(b) hearing.  But he cites
18     no authority suggesting he had a constitutional right to testify at that hearing.  Indeed,
       he had no right to a hearing at all.  *State v. Kilgore*, 147 Wn.2d 288, 294-95, 53 P.3d
19     974 (1992).  And again, Mr. DeVincentis says that, had he testified, he would have
       admitted committing the abuse against V.C. that his family members say they never
20     observed.  Mr. DeVincentis demonstrates no actual and substantial prejudice
       stemming from constitutional error.  *In re Pers. Restraint of Lord*, 123 Wn.2d 296,
21     303, 868 P.2d 835 )(1994).

22 (Dkt. No. 11, Ex. 19 at 5.)

23        Petitioner argues in these proceedings that he had a right, grounded in the Fifth, Sixth, and

24 Fourteenth Amendments, to testify on his own behalf at the pre-trial evidentiary hearing.

25
   REPORT AND RECOMMENDATION
26 PAGE - 13

1    Respondent argues that the right asserted by petitioner has not been clearly established by the

2    Supreme Court and, thus, petitioner cannot obtain relief under 28 U.S.C. § 2254(d).  Petitioner

3    appears to argue in response that the general principle that a defendant has a right to testify on his

4    own behalf at trial, a right which has been recognized by the Supreme Court, logically extends to the

5    pretrial hearing context.

6         Petitioner does not identify any Supreme Court precedent which holds that a criminal

7    defendant has a right to testify at a pre-trial hearing, it thus appears that the right asserted by

8    petitioner is not clearly established.  However, even if, as petitioner argues, the general principle that

9    a defendant has a right to testify on his own behalf in defense to criminal charges can be extended to

10   the pretrial context, petitioner cannot prevail here.

11        Petitioner contends that if he had known of his right to testify at the pre-trial hearing, he

12   would have elected to do so to contradict V.C.'s testimony.  However, the record before this Court

13   suggests otherwise.  During the course of petitioner's criminal proceedings petitioner's counsel made

14   clear that petitioner would not testify with respect to the ER 404(b) issue.  After the presentation of

15   some of the state's witnesses, including those relevant to the 404(b) issue, the trial court noted that

16   counsel had not yet argued the 404(b) evidence and that no finding with respect to that issue had yet

17   been made.  The prosecutor then inquired of petitioner's trial counsel whether he intended to include

18   his client's testimony as to the 404(b) issue.  The following exchange between counsel then occurred:

19             MS. JOHNSON:        Your Honor, I think the court's determination on the
               404(b), I don't know whether Mr. Allen intends to incorporate his client's testimony
20             or wishes to incorporate his client's testimony into the 404(b) determination.

21             MR. ALLEN:        I can answer that very quickly.  I'm assuming - - let's
               just analogize to a jury trial.  I would not put my client on on a pretrial hearing on
22             404(b) in this case, so obviously I don't want his - - I'm not asking that his testimony,
               if he does testify, be part of that.
23
      (Dkt. No. 16, Ex. 29 at 714-16.)
24
           While this exchange does not address whether trial counsel expressly advised petitioner of his
25
      REPORT AND RECOMMENDATION
26    PAGE - 14

1  right to testify, it does suggest that petitioner, who was present during the exchange, was on notice

2  that testifying with respect to the ER 404(b) issue was something he was entitled to do and was

3  distinct from the issue of testifying at trial.  Petitioner, however, made no apparent effort to assert his

4  purported right to testify.  The above exchange also strongly suggests that counsel did not believe it

5  was in his client's best interest to testify with respect to the ER 404(b) issue, even if petitioner were

6  to choose to exercise his right to testify at trial.  It seems unlikely that petitioner would have chosen

7  to testify at the pretrial hearing, even if he had been expressly advised of his right to do so, in light of

8  his counsel's obvious opposition to the idea.

9      And, even if petitioner had elected to testify, nothing in the record suggests that his testimony

10  would have altered the conclusion of the trial court with respect to the admissibility of V.C.'s

11  testimony.  Petitioner simply makes no showing that he suffered any actual and substantial prejudice

12  as a result of the alleged constitutional errors.[1]  Accordingly, this Court concludes that the decision of

13  the Washington Supreme Court with respect to petitioner's claims that trial counsel's alleged failure

14  to advise petitioner of his right to testify violated both his right to testify and his right to effective

15  assistance of counsel was not contrary to federal law nor was the court's application of federal law

16  objectively unreasonable.  Petitioner's federal habeas petition should therefore be denied with respect

17  to his second and third grounds for relief.

18                               Ground Four:  Sentencing

19      Petitioner asserts in his final ground for relief that his he received an increased sentence based

20  on facts which were determined by the sentencing judge, in violation of his Sixth Amendment right

21

22

23      [1] In order for petitioner to be entitled to relief with respect to his claim that he was denied his
    right to testify, he must establish that the error resulted in actual and substantial prejudice.  *Brecht v.*
    *Abrahamson*, 507 U.S. 619, 637-39.  Likewise, in order to prevail on his ineffective assistance of
24  counsel claim, petitioner must establish that he was actually prejudiced by counsel's alleged deficient
    conduct.  *Strickland*, 466 U.S. at 694.
25

    REPORT AND RECOMMENDATION
26  PAGE - 15

1  to a jury trial.  More specifically, petitioner argues that his maximum sentence was increased when

2  the sentencing court concluded that petitioner's prior New York offenses were comparable to

3  Washington felonies based on facts which were neither admitted nor proved at the time of

4  conviction.  Petitioner relies on the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S.

5  296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) to support this claim.

6        In *Schardt v. Payne*, 414 F.3d 1025 (9th Cir. 2005), the Ninth Circuit held that the Supreme

7  Court's decision in *Blakely* could not apply retroactively on collateral review to a conviction that

8  became final before *Blakely* was decided.  There is no current United States Supreme Court

9  precedent holding that *Blakely* may be applied retroactively to cases such as petitioner's which became

10  final before *Blakely* was decided.  Accordingly, petitioner's federal habeas petition should be denied

11  with respect to his fourth ground for relief as well.

                                CONCLUSION

13        For the reasons set forth above, this Court recommends that petitioner's federal habeas petition

14  be denied and that this action be dismissed with prejudice.  A proposed order accompanies this Report

15  and Recommendation.

16        DATED this 12th day of February, 2007.

17                                                    _James P. Donohue_
                                                    _____
18                                                    JAMES P. DONOHUE
                                                    United States Magistrate Judge

19

20

21

22

23

24

25

26  REPORT AND RECOMMENDATION
    PAGE - 16